# IN THE UNITED STATES DISTRICT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**HAROLD JEROME THORNTON,**

        **Plaintiff,**

v.                                                               **Civil Action No. 5:12cv74**
                                                                         **(Judge Keeley)**

**TERRY O'BRIEN, Warden;**
**JOHN SQUIRES, Officer;**
**ANDREW CRAWFORD, Counselor;**
**ROBERT BRINSON, LT.,**

        **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On May 31, 2012, the *pro se* plaintiff initiated this case by filing a complaint against Warden O'Bryant [sic], Lt. Binson, and two John Does which was docketed as a Bivens action[1]. In compliance with a Notice of Deficient Pleading, the plaintiff filed his complaint on this court's approved form on June 19, 2012. The plaintiff was granted permission to proceed *in forma pauperis* on June 21, 2012, and he paid the initial partial filing fee on August 2, 2012. On August 31, 2012, the plaintiff was granted leave to file an amended complaint. On September 10, 2012, the plaintiff filed his amended complaint, in which he named Warden O'Bryant [sic], Officer Squires, Counselor Cranford, and Lt. Brinson as defendants. Upon a preliminary review of the amended complaint, the undersigned determined that summary dismissal was not appropriate at that time and

---

[1] Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)

directed the United States Marshal Service to serve the amended complaint.

On, February 15, 2013 the defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Because the plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice on February 20, 2013.[2] On May 10, 2013 the plaintiff filed a Motion for Summary Judgment with a memorandum in support and numerous exhibits.

## II.  Contentions of the Parties

### A.  The Complaint[3]

The plaintiff is currently incarcerated at USP Florence High which is located in Colorado. However, the plaintiff's complaint involves allegations surrounding the purported use of excessive force against him at USP Hazelton in May of 2010. More specifically, the plaintiff's complaint contains five claims. In claim one, the plaintiff alleges that on May 25, 2010, Lt. Cranford "slammed his head into the pavement" while he was on the floor in hand restraints and then jumped "down onto [his] lower back region with his knees with all his weight causing wanton infliction of pain." In claim two, the plaintiff alleges that Lt. Squires "assisted" Lt. Cranford by holding [him] on the floor when [he] submitted without 'any' resistance." In claim three, the plaintiff alleges that on May 26, 2010, Lt. Brinson "placed his elbow against [his] throat, pushing [him] back into a cell and up against a wall." As part of this claim, the plaintiff also alleges that Lt. Brinson forced him to house with a "hostile" cellmate. In claim four, the plaintiff alleges that from May 25, 2010, until August 2010, Warden O'Brien failed to take disciplinary action to "curb the known pattern of corruption by

---

[2] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro se* plaintiff of his right to file material in response to a motion for summary judgment).

[3] This Report and Recommendation addresses the issues raised in the plaintiff's amended complaint which was filed on September 10, 2012. (Doc. 22).

prison officials to correct wrong actions" and "acted jointly in concert or in conspiracy on behalf of their actions." In claim five, the plaintiff alleges that Officer Goldstein, Psychologist Mrs. Thompson, Officer Tokish, Officer Newson, and Officer Shirk violated Policy Statement 3420.09 by failing to report the conduct he complains occurred on May 25, 2010.

The plaintiff alleges that as a result of these actions and inactions he sustained an injury to his lower back which continues to worsen, as well as mental and emotional suffering. Fo relief, he seeks compensatory damages in the amount of $900,000.

**B.    The Defendants' Motion to Dismiss or for Summary Judgment**

In their memorandum in support of their motion to dismiss or, in the alternative, for summary judgment, the defendants argue that the plaintiff's complaint should be dismissed for the failure to state a claim for which relief may be granted. In support of that argument, the defendants assert:

(1) the plaintiff has failed to administratively exhaust any of his four claims[4];

(2) claim one and claim two are unsubstantiated by the plaintiff's medical records;

(3) the "hostile" cellmate component of claim three is unsupported in fact or law;

(4) claim four lacks any allegation of personal involvement and is improperly based upon the theory of *respondeat superior*; and

(5) the defendants are entitled to qualified immunity.

**C.    The Plaintiff's Motion for Summary Judgment**

The plaintiff has not filed a response to the defendant's Motion to Dismiss or, in the alternative for Summary Judgment. Instead, the plaintiff filed his own Motion for Summary

---

[4]The defendant contends that the plaintiff's fifth claim is not a viable cause of action in this case to the extent that it is directed at USP Hazelton officers that the plaintiff has not named in his complaint and have not been served.

Judgment, memorandum in support thereof, and exhibits. The plaintiff reiterates his allegations that the defendants utilized excessive force in violation of his Eighth Amendment right to be free of cruel and unusual punishment. In addition, the plaintiff maintains that the defendants disregarded an excessive risk to his safety when they placed inmate McCarter in his cell. The plaintiff also makes allegations that BOP officials at USP Coleman violated his rights to programming when they failed to process his case manager's recommendation that he be transferred to a medium security facility, instead transferring to USP Big Sandy in Kentucky.[5] Finally, the plaintiff appears to make allegations that he received inadequate medical care following the events he alleges occurred on May 25 and 26, 2010. No where in his Motion for Summary Judgment does the plaintiff respond to the defendants' assertion that this matter must be dismissed for failure to exhaust the BOP's administrative remedy process.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

---

[5]To the extent that the plaintiff alleges misconduct on the part of BOP staff at USP Colemen, which is located in Florida, this court is clearly without jurisdiction to consider said allegations.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV.  Analysis

### A.  Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[6] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 93-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

The Bureau of Prisons makes available to its inmates a three level administrative remedy

---

[6]  Porter v. Nussle, 534 U.S. 516, 524 (2002).

process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In their response, the defendants assert that the plaintiff has not exhausted his administrative remedies regarding the allegations raised in his complaint. More specifically, the defendants assert that the plaintiff has filed sixteen (16) administrative remedies since May, 2010, when he alleges that incidents at issue took place. However, as noted by the defendants, none of those remedies complains of an incident either in the A-1 Unit of SHU at USP Hazelton on May 25, 2010, or May 26, 2010.

A review of the exhibits tendered by the defendants establishes that the first administrative remedy filed by the plaintiff after May 25, 2010, was on August 10, 2010. That remedy, 602014-F1, contested a decision by a Disciplinary Hearing Officer ('DHO") regarding procedures, evidence and sanctions. The remedies that follow, relate to DHO sanctions, appeal of DHO actions, Special Management Unit policies on personal property, rejection of personnel property and claims of staff misconduct at USP Lewisburg. (Doc. 44-4, pp. 8-11). Clearly, none of these administrative remedies relate even remotely to the allegations raised in the plaintiff's complaint, and therefore, the

8

same is due to be dismissed for failure to exhaust administrative remedies as required by the PLRA. Not only do the defendants provide documentary support for dismissal, the plaintiff has made absolutely no effort to demonstrate that the exhibits are inaccurate.[7]

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss or for Summary Judgment (Doc. 44) be **GRANTED,** the plaintiff's Motions for Default Judgment (Docs. 53 and 63) be **DENIED**[8], the plaintiff's Motion for Summary Judgment (Doc. 62) be **DENIED**, and the plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States

---

[7]In his amended complaint, the plaintiff references Remedy ID Nos. 60236-F!, 603507-R1, and 603507-A1 as proof of exhaustion. However, as noted in the text of the Report and Recommendation, those remedies dealt with DHO hearings and not with allegations of excessive force, failure to protect, or violation of the BOP standard of conduct expected of staff.

[8]Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend...and that fact is made to appear by affidavit or otherwise, the Clerk shall enter the party's default." However, "[n]o judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a clair or right to relief by evidence satisfactory to the court." Fed.R.Civ.P 55(e).
In this instance, the Court need not address Rule 55(a) because the respondent filed a timely response.

v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: June 17, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE